UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
PATRICK NEBIOLO,
:
         Plaintiff,                              Case No. 17 Civ. 5679
:
    -against-
:        **COMPLAINT**
W.P. LAVORI IN CORSO SRL, WOOLRICH
EUROPE SRL, and WOOLRICH        :        **JURY TRIAL DEMANDED**
INTERNATIONAL, LIMITED,
:
         Defendants.
------------------------------------------------------------X

       Plaintiff Patrick Nebiolo ("Mr. Nebiolo" or "plaintiff"), by his counsel, Outten & Golden LLP, hereby complains as follows:

**NATURE OF ACTION**

       1.    Patrick Nebiolo brings this action for breach of contract, fraudulent inducement, and promissory estoppel against defendants W.P. Lavori in Corso SRL ("WPL"), S.r.l. Woolrich Europe ("Woolrich Europe"), and Woolrich International, Limited ("WIL"). As set forth below, defendants promised Mr. Nebiolo that after leading the merger team and putting into place the structure that resulted in a successful merger of WPL, Woolrich Inc.("Woolrich"), and Woolrich Europe in November 2016, he would be appointed as either the Chief Executive Officer of the North American subsidiary of the merged entity or its Global CEO. All of the deal documents list Mr. Nebiolo as a "key executive" and/or CEO in the new company, and when Mr. Nebiolo received a competing offer, defendants asked him not to take the position and to stay on through consummation of the merger. When Mr. Nebiolo had done all of the work, and fully delivered

the merger, however, defendants reneged and fired him while retaining the rest of the much less experienced Woolrich management team.

## PARTIES

2. Plaintiff Patrick Nebiolo is an individual who resides in Tenafly, New Jersey. Mr. Nebiolo worked as a Managing Director for Woolrich at 300 Park Avenue South and 597 Broadway in New York City from December 2012 until the termination of his employment in December 2016. During 2015 and 2016, at Cristina Calori's request, Mr.Nebiolo also worked as CEO of WP Lavori USA out of that company's offices at 597 Broadway, New York.

3. Defendant W.P. Lavori in Corso SRL is an Italian apparel company that was founded in 1982. In 2016, WPL had revenues of approximately $190 million, primarily from the licensing of the United States brand, Woolrich. WPL is headquartered in Bologna, Italy, and has a United States subsidiary, WP Lavori USA, which opened its first flagship store in the United States in Brooklyn, New York, in 2014. WP Lavori SRL has been licensing the Woolrich brand for more than 30 years.

4. Defendant Woolrich Europe SRL was created in 2016 for the sole purpose of merging with Woolrich. Woolrich Europe, which is wholly owned by WPL, now owns the licensing rights for the Woolrich brand, which were transferred from WPL to Woolrich Europe as part of the merger. On November 29, 2016, Woolrich and Woolrich Europe jointly announced the completion of an agreement to merge (and acquisition by WPL of approximately 80% of the combined entity) into Woolrich International. Prior to the merger, Woolrich Europe was headquartered in Bologna Italy.

5. Defendant WIL is the newly created company holding the shares of both Woolrich and Woolrich Europe after the merger consummated in November 2016. WIL is

headquartered in London, England, and has operating offices at 597 Park Avenue South (the WP Lavori USA offices) in New York City; Woolrich, Pennsylvania; Bologna, Italy; and Milan, Italy.

## JURISDICTION

6.  This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.  Plaintiff resides in New Jersey and defendants are headquartered in London, England, and Bologna, Italy.  Defendants all transact business in New York County.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2), in that defendants may be found in this District and a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

## FACTUAL ALLEGATIONS

8.  Plaintiff Patrick Nebiolo graduated from Sapienza Universita di Roma (the University of Rome) in 1991, and received his Masters in Business Administration from the Stern School of Business at New York University in 1998.

9.  Mr. Nebiolo has 25 years of business management experience.  In the past 15 years, he has specialized in the apparel business on a global level.  Between January 2010 and August 2012, he was a Partner and Head of Private Equity at MBS Consulting, focusing on the apparel, textile and fashion industries.  He also consulted for defendant WPL in 2011 and 2012, which culminated in a job offer from Woolrich.

10. On December 1, 2012, Mr. Nebiolo entered into an employment contract with Woolrich.  He was given the title of Managing Director and asked, in addition to managing the

licensing contract with WPL, to restructure Woolrich and lead the team to merge Woolrich and WPL.

11. During the 32 years that WPL was licensing Woolrich in Europe, it attempted on several occasions to put together a transaction to acquire Woolrich. It was never successful - until Mr. Nebiolo was hired. With Mr. Nebiolo leading the merger team and doing the day to day work on the transaction beginning in 2012, WPL finally succeeded in its long-term goal, as the merger was completed on November 22, 2016.

12. Throughout the merger planning and negotiations, the parties always contemplated – and Mr. Nebiolo was promised -- that he would ultimately be appointed as the Chief Executive Officer for North America of the new entity formed by the merger.

13. The first Letter of Intent on the deal was signed on October 31, 2014. Mr. Nebiolo is listed in the Letter of Intent as a "key employee" in the new entity who will have an employment agreement.

14. On September 13, 2015, Paolo Corinaldesi, the leader of the merger team on behalf of WPL, and Mr. Nebiolo exchanged emails regarding the transaction's Memorandum of Understanding. In this series of emails, Dr. Corinaldesi suggested that Mr. Nebiolo meet directly with Cristina Calori, the President and majority shareholder of WPL, to discuss his executive package before the merger took place.

15. A Memorandum of Understanding was signed on September 30, 2015, with no change in Mr. Nebiolo's future status as a "key employee" in the new entity.

16. On November 4, 2015, Dr. Corinaldesi emailed Mr. Nebiolo to state that Ms. Calori would not pursue the merger on behalf of WPL unless Mr. Nebiolo stayed on to run the combined entity's North American operations.

17. On December 22, 2015, WPL sent a written offer for Woolrich shares to Woolrich's Board of Directors, identifying Mr. Nebiolo as "CEO America" of the post-merger entity. The same day, Dr. Corinaldesi informed Mr. Nebiolo that he had spoken with Board Member Peter LaFleche and assured him that Mr. Nebiolo would serve as a senior executive after the merger.

18. On January 1, 2016, Mr. Nebiolo emailed Ms. Calori, asking her to confirm the terms of his employment with the post-merger entity, consistent with the terms that they had discussed. Those terms were that Mr. Nebiolo would (i) be CEO North America of the new company subject to a three-year term contract; (ii) receive a salary of $600,000 a year; (iii) receive an annual performance bonus of at least 50% of his annual salary; and (iv) receive annual equity incentive awards of .5% of the total outstanding equity in the new company (for a total of 1.5% of the outstanding equity in the post-merger entity). Ms. Calori replied by email that same day, confirming that WPL had agreed to these terms concerning Mr. Nebiolo's future position.

19. Three days later, on January 4, 2016, Mr. Nebiolo submitted a reorganization plan to Ms. Calori and her management team in which he was indicated as the CEO of North America.

20. On February 5, 2016, WPL and Woolrich entered into a second Letter of Intent which identified Mr. Nebiolo as CEO of North America in the post-merger entity.

21. On June 18, 2016, WPL sent Mr. Nebiolo organizational charts for the new company which again identified him as CEO of North America.

22. On July 14, 2016, Mr. Nebiolo told Dr. Corinaldesi that he had received an unsolicited job offer from another company and shared the written offer with both Mr.

Corinaldesi and Ms. Calori. He informed Dr. Corinaldesi of the essential terms of the new offer, and asked for a final written employment agreement so that he could let the other offer go.

23.     Pursuant to the offer, Mr. Nebiolo would: (i) be President and CEO; (ii) receive a base salary of $500,000 a year and an annual bonus of up to 50% of salary; (iii) have a guaranteed bonus for the first year of $50,000; (iv) participate in the company's profits participation plan entitling Mr. Nebiolo to an equity award of up to 7% of the appreciation of the company (upon a change in control) in excess of the aggregate capital investment of the preferred investors; and (v) have an employment agreement providing one year's salary in the event he was terminated without cause in the first year of the contract.

24.     Dr. Corinaldesi responded that he was "on it" (i.e., that he would obtain a formal contract for Mr. Nebiolo), and once again confirmed the terms of Mr. Nebiolo's role in the merged entity.

25.     On July 21, 2016, Ms. Calori confirmed again that Mr. Nebiolo would be CEO North America of the new company on the terms already discussed.

26.     On August 3, 2016, WPL and Woolrich executed merger agreements which again identified Mr. Nebiolo as a "key employee" in the post-merger entity. Three days later, Ms. Calori told Mr. Nebiolo in writing that his employment agreement with the new company would be finalized shortly after the closing of the merger.

27.     During the week of August 21, 2016, Mr. Nebiolo met with both Dr. Corinaldesi and Ms. Calori regarding a formal written agreement, and reminded them that he had a competing offer from another employer and that he needed to give the other employer a final answer soon. At that meeting, Dr. Corinaldesi and Ms. Calori asked Mr. Nebiolo not to accept the other offer and to stay on board after the merger was complete. They promised to get him a

written agreement by the beginning of September. Based on their representations, Mr. Nebiolo turned down the competing offer.

28. The September 7, 2016 proxy statement – which was drafted jointly by Dr. Corinaldesi and counsel to Woolrich -- sent to WPL and Woolrich shareholders stated that the "Master Transaction Agreement" identified Mr. Nebiolo as a "key employee" of the post-merger entity and that WPL and Woolrich "have agreed to assist Woolrich International in entering into employment agreements with and to implement incentive compensation plans for" a group of executives, including Mr. Nebiolo.

29. On September 29th 2016, Mr. Nebiolo and Woolrich's Board of Directors presented a document entitled "Rationale for the Merger" to the Woolrich shareholders explaining the benefits of the merger and the organization post-merger. This document – which was also created by Dr. Corinaldesi and the WPL management team -- identified Mr. Nebiolo as Managing Director of Woolrich USA. Based on these documents, the majority of Woolrich shareholders voted in favor of the merger and the merger was approved. Pursuant to the merger, 65% of Woolrich shareholders sold their shares at a price of $100 per share, which represented nearly a 300% appreciation over the 2016 estimated value.

30. On November 22, 2016, the merger of Woolrich Europe and Woolrich was consummated, and Woolrich publicly announced the transaction on November 29, 2016. Dr. Corinaldesi was named the CEO of WIL, and Ms. Calori its Chairman.

31. On November 31, 2016, Dr. Corinaldesi and Ms. Calori met with Mr. Nebiolo and informed him that his employment agreement with Woolrich would be terminated and that he would not have any role in WIL, while the rest of the Woolrich management team was kept intact.

## FIRST CAUSE OF ACTION

### Breach of Contract

32. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

33. Mr. Nebiolo and defendants had an agreement that if Mr. Nebiolo successfully consummated a merger between Woolrich and Woolrich Europe, he would be appointed CEO of North America in the merged entity. That agreement was subject to certain specific terms concerning temporal scope and compensation.

34. Mr. Nebiolo fully performed under the terms of the agreement.

35. Defendants breached their agreement with Mr. Nebiolo by failing to appoint him CEO of North America in the merged entity -- or even offer him any executive role in WIL.

36. By reason of the foregoing, and as a direct and proximate result of defendants' breach of contract, Mr. Nebiolo has sustained damages in an amount to be determined at trial, but in no event less than $6,000,000, with pre- and post-judgment interest at the highest rate permitted by law.

## SECOND CAUSE OF ACTION

### Fraudulent Inducement

37. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

38. Defendants falsely represented to Mr. Nebiolo that if he continued to work through the consummation of the merger of Woolrich and Woolrich Europe, he would be appointed CEO of North America of the merged entity. Those representations are set forth above at paragraphs 13, 15-21, and 24-29.

39. In fact, those representations were false and defendants did not intend to appoint Mr. Nebiolo CEO of North America of the merged entity.

40. Defendants made these misrepresentations to Mr. Nebiolo to induce him to remain working on the merger until its consummation.

41. In July 2016, Mr. Nebiolo received an offer to serve as CEO of another company.

42. Mr. Nebiolo informed defendants that he had received a competing offer from another company and that he needed to decide whether to accept it.

43. Defendants assured Mr. Nebiolo that he would have a role as CEO of North America of the post-merger entity, subject to the specific terms set forth at paragraph __ above, and asked that he turn down the competing offer and remain working on the merger.

44. Defendants made these misrepresentations to Mr. Nebiolo to induce him to turn down the competing offer and continue working on the merger transaction.

45. The promises made to Mr. Nebiolo concerning his future role with the merged entity were material to his decision to turn down the competing job offer and remain working on the merger transaction, and he justifiably relied on the representations made to him by defendants.

46. In representing to Mr. Nebiolo that he would be appointed CEO of North America of the new company, defendants acted with the intent to deceive him into remaining with Woolrich and working through the consummation of the merger transaction.

47. As a result of defendants' fraudulent inducement, Mr. Nebiolo suffered damages, including damages arising out of his loss of employment and compensation for the competing offer he declined.

## THIRD CAUSE OF ACTION

### Promissory Estoppel

48. Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs above with the same force and effect as if fully set forth herein.

49. Defendants promised Mr. Nebiolo that if he continued to work through the consummation of the merger of Woolrich and Woolrich Europe, he would be appointed CEO of North America of the merged entity. Those promises are set forth above at paragraphs 13, 15-21, 24-29

50. In July 2016, Mr. Nebiolo received an offer to serve as CEO of another company.

51. Mr. Nebiolo informed defendants that he had received a competing offer from another company and that he needed to decide whether to accept it.

52. Defendants promised Mr. Nebiolo that he would have a role as CEO of North America of the post-merger entity, subject to the specific terms set forth at paragraph 18 above, and asked that he turn down the competing offer and remain working on the merger.

53. The promises made to Mr. Nebiolo concerning his future role with the merged entity were material to his decision to turn down the competing job offer and remain working on the merger transaction, and he justifiably relied on the representations made to him by defendants in deciding not to accept the competing job offer.

54. As a result of defendants' false promises, Mr. Nebiolo suffered damages, including damages arising out of his loss of employment and compensation for the competing offer he declined.

**WHEREFORE**, plaintiff respectfully requests that this Court enter an award:

A. Declaring the acts complained of herein a breach of contract, fraudulent inducement, and promissory estoppel by defendants;

B. Directing defendants to take such affirmative action as is necessary to come into compliance with their agreement with plaintiff, including making him CEO of North America for WIL, and paying him on the terms set forth at paragraph 18, above;

C. Awarding plaintiff any backpay owed and such interest as is allowed by law; and

D. Granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury as to all issues in the above matter.

Dated: New York, New York
July 26, 2017

Respectfully submitted,

OUTTEN & GOLDEN LLP

By: /s/ Darnley D. Stewart
Darnley D. Stewart
dstewart@outtengolden.com
685 Third Avenue, 25th Floor
New York, New York 10017
(212) 245-1000

*Attorneys for Plaintiff Patrick Nebiolo*

11